Application of RICHARDSON et al.

Patent Appeal No. 4944.

Court of Customs and Patent Appeals.

Jan. 4, 1945.

J. W. Greenbowe, of Bloomfield, N. J. (Towson Price, of Bloomfield, N. J., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

The Primary Examiner of the United States Patent Office, after allowing eighteen claims, rejected twenty-eight claims in appellants' application for a patent relating to an improved method and apparatus for molding glass articles, particularly bulbs for incandescent electric lamps. Upon appeal to the Board of Appeals, the Examiner's rejection was in all respects affirmed as to all the claims except No. 34, which the Board allowed. From the decision of the Board affirming the rejection of claims 3, 5 to 7, inclusive, 14, 25, 29 to 32, inclusive, 36 to 39, inclusive, 41 to 46, inclusive, 50 to 53, inclusive, and 55 to 57, inclusive, appellants have here appealed.

The invention is described by the Examiner as follows:

"The apparatus to which the rejected claims relate comprises a carriage rotatable about a vertical axis, a plurality of plural part, circumferentially spaced molds, on the carriage, a glass furnace having a feed orifice through which a continuous stream of molten glass is fed, and means to cut off the stream from a charged mold and then permit the stream to enter an oncoming mold. The cut-off means may be a roller, an air jet, a pair of rollers, or a mold extension plate. Each mold during rotation of the carriage swings outwardly beneath the glass stream, receives a charge, and then swings inwardly to its original circle of travel where the charge is pressed and blown. Means are provided to oscillate the mold. After the charge is blown, the mold is opened to discharge the finished article.

"Each mold comprises four laterally separable sections, the neck portion of the mold consisting of two such sections and the body portion of the mold consisting of two such sections. During charging of the mold, a slidable plate separates the neck and body portions of the mold. This plate prevents the charge from dropping into the cavity of the body mold until the plate is withdrawn. After withdrawal of the plate, a plunger is forced downwardly into the charge and air is blown through the plunger forcing the glass to take the shape of the body mold."

Ten of the allowed claims are method claims, and nine are for the apparatus. Of the appealed claims, three are for the apparatus and twenty-four are for the method.

Claims 3 and 45 seem to be illustrative of the disputed subject-matter. They read as follows:

"3. The method of forming glass articles comprising introducing a quantity of molten glass into the top portion of a mold, releasing said glass from said top porton to allow it to sag toward the bottom portion, forcing a plunger into said sagging glass to push it a major portion of the distance to the extreme lower end of said mold and partially form the article, and continuing the formation of said article in said mold by introducing compressed air through said plunger."

"45. The method of working glass which includes introducing freely flowing molten glass into a mold, allowing the glass to remain in the mold, until it reaches a

working viscosity and then blowing an article therefrom."

The references relied upon are: Swan, 774,708, No. 8, 1904; Brookfield, 1,011,023, Dec. 5, 1911; Potter, 1,317,176, Sept. 30, 1919; Moorshead, 1,482,762, Feb. 5, 1924; Messer, 1,854,753, Apr. 19, 1932; Rowe, 1,914,169, June 13, 1933.

Claims 3, 5, 6, 7, 14, 30, and 32 were rejected as unpatentable over the Rowe patent. Rowe discloses a neck mold having two laterally separable sections and a body mold which also may have two laterally separable sections. The patent also shows a plate, which may be moved to and from operative position beneath the neck mold. When the plate is in position under the neck mold, a charge of glass is deposited in that mold. The plate is then removed, and the glass sags downwardly. Next a plunger is thrust into the glass, and air is blown through the plunger into the glass. The body mold then moves up against the under side of the neck mold, and the air coming through the plunger causes the formation of the glass article in the body portion of the mold. The mold then opens and discharges the finished article. The Examiner, in referring to the rejection of these claims, said: "* * * Nothing inventive or patentable would be required, it is held, to place the body mold of Rowe beneath the neck mold before thrusting the plunger into the glass, and to make the plunger long enough to thrust the glass down into the mold as far as desired."

The Board, in affirming the Examiner with respect to claims 3, 5, 6, 7, and 30, stated:

"* * * we fail to see wherein they definitely or patentably distinguish over Rowe. The use of air as the blowing agent by Rowe's method would only be a matter of choice. The lower mold section of Rowe could obviously be made sectional and such a construction is indicated in Fig. 14. However, the specific apparatus used does not define a method patentably novel over Rowe.

"Rowe refers to severing the glass after having been preformed in suspension * * * and we see no reason why freely flowing glass could not be used as in Swan. It is a critical feature of the Swan process that a running stream of molten glass is used. Claims 37 to 39, 50 to 53 and 55 to 57 on appeal include this feature and are otherwise substantially the same as claims 3, 5, 6, 7, and 30.

"We agree with the examiner that the first named group of claims are unpatentable over Rowe and Swan. Brookfield, Moorshead and Potter are cumulative as indicated in the examiner's statement."

The Swan patent referred to in the Board's opinion relates to making a composite glass and metal article, such as an electric light globe base. The instant claims refer only to glass articles. Some of the other references show the common practice of feeding glass in different stages of viscosity to the mold, either in gobs or from a continuously flowing stream. Swan states that he feeds the glass in a stream that *flows freely like water*. Moorshead also flows glass in a stream. He uses a cutter to sever the glass stream in finishing the filling of the mold. The stream then continues to flow uninterruptedly into the next mold. Appellants similarly cut their stream of glass by a roller which deflects the stream to the oncoming mold. It seems that Brookfield, Moorshead, and Potter were regarded as more or less cumulative but, in certain respects with which we are here concerned, they show the state of the art.

Claims 37, 38, 39, 50, 51, 52, 53, 55, 56, and 57 were rejected as unpatentable over the patent to Rowe in view of the patents to Swan, Brookfield, Moorshead, and Potter. As to these claims the Examiner stated: "* * * Neck molds, such as Rowe discloses, may be charged from a stream of freely flowing glass such as each of the auxiliary references shows without invention, it is held."

Claim 31 was rejected as being fully met by Rowe. That claim emphasizes a spearator plate interposed slidably between the upper and lower mold sections. The Examiner stated that he saw no reason why the plate of Rowe could not be slid into and out of operative position.

Claim 25 was rejected as being fully met by Potter, the Examiner holding that it read directly on Potter. Potter states that the carriage carrying his molds may be rotated either continuously or intermittently, and the Examiner said: "* * * If it is rotated intermittently, obviously each mold hesitates beneath the glass stream while being filled."

Claims 29 and 36 were rejected as unpatentable over the patent to Messer in

view of either Swan, Brookfield, Potter, or Moorshead. As to these claims the Examiner stated: "* * * It is held that no invention is required to feed the quota of glass to each mold unit of Messer from the glass stream of any of the auxiliary references. * * *" He then pointed out: "* * * In regard to claim 36, it is noted that the patentee Messer blows through his neck mold while blowing a glass charge."

The Board added another ground of rejection for claim 29, stating that it "merely states, in effect, the mode of operation of the machine of claim 34 and is not a proper process claim." In view of our approval of the ground of rejection by the Examiner which was affirmed by the Board, it is not necessary for us to consider the said additional ground of rejection of claim 29 by the Board, even if it had been specifically assigned as error in the reasons of appeal.

Claims 41 and 42 were rejected on Swan, it being held that they read directly on that patent.

Claims 43 and 44 were rejected on Swan, the Examiner stating: "* * * The patentee states that his glass flows freely like water he feeds it in this condition to the molds. It is true that he presses the glass into a composite article, incorporating a metallic element therein. It is held, however, that nothing inventive would be required to omit the metallic element when an 'all-glass' product is wanted."

Claims 45 and 46 were rejected upon the same grounds as claims 37 and 38.

In this court appellants, in their brief, make the following statement:

"But the *main reason* for appeal is because of the disallowance of claims numbered 41 to 46, inclusive, which define the *real gist* of the broad invention made by appellants, stripped of *unnecessary*, although *perhaps desirable* limitations, and that is the idea, *previously thought impossible* in the glass industry, of the three steps:—(1) introducing freely-flowing molten glass into a mold, (2) allowing the glass to remain in the mold until it reaches working viscosity, and then (3) blowing an article therefrom in said mold!" [Emphasis by appellants]

By reason of this statement, we have thought it proper to quote claim 45 as typical of this group of claims which broadly cover the three steps above referred to.

At this point we deem it advisable to dispose of every other issue than the one embraced in the quoted contention with respect to this group of broad claims relating specifically to freely flowing molten glass. We are in entire agreement with the holding of the Board, which affirmed that of the Examiner (except as to claim 34, which the board allowed) for the reasons assigned by the tribunals below; and further discussion of the subject and the alleged importance of the limitations contained in said claims would not be helpful.

Appellants argue at great length here, as they did before the Patent Office tribunals (as evidenced by two petitions for rehearing, reconsideration and clarification of decision), that the gist of the invention defined by some of the appealed claims is the method of introducing "freely flowing molten glass" into a mold, allowing the glass, by reason of the construction of the mold, to cool until it reaches a working viscosity, and then blowing the glass in the mold to form the article. Appellants state that they were the first to take these steps in the glass blowing art, and they urge that a useful result flowed therefrom. They also argue, of course, that what they did was not obvious and that it amounted to invention.

It will be recalled that claims 45 and 46, which emphasize these three steps, were rejected on Rowe in view of either Swan, Brookfield, Moorshead, or Potter. Appellants state that Swan does not show any blowing at all, and that the Rowe patent fails to show the use of freely flowing molten glass. This seems to be true, but it was the view of the tribunals below, as it is ours, that freely flowing glass in the art of making glass articles was old in Brookfield, Moorshead, and Potter, and that Swan's glass was represented as flowing "freely like water." On this phase of the case, the Board tersely stated that the rejection by the Examiner of this group of claims upon the combination of references was proper. The Examiner, on this phase of the case, stated:

"The rejection of claims 37, 38 and others, as unpatentable over the patent to Rowe in view of any of Swan, Brookfield, Moorshead and Potter, as explained above, is also applicable to claim[s] 41 to 46, as amended, and claims 41 to 46 stand finally rejected accordingly.

"It is old and common, of course, to make glass articles by either pressing or

by blowing or by both pressing and blowing, as shown by the references relied upon. When a glass charge is dropped into a mold, the charge is allowed to cool to working temperature because the mold abstracts heat from the glass. As indicated by the references, it is common practice to feed glass of various viscosities to molds and to feed it either in gobs or from a continuously flowing stream. The patentee, Swan, feeds the glass in a stream and he states that his glass flows freely like water. The patentee, Moorshead, flows glass in a stream to the molds. He uses a cutter to cut the glass stream to terminate the filling of one mold, and the stream continues to flow uninterruptedly into the next mold, as explained on page 5 of the patent, lines 95 to 123. This is similar to the manner in which applicants cut their stream of glass and deflect it from a charged mold to the next on-coming mold.

"The applicants, during prosecution of this case, have laid emphasis on the fact that their glass is fed to molds in a stream and they have attempted to claim that the glass is fed to the molds in a very fluid condition, as indicated by such expressions as 'glass of watery consistency' and 'at about 1000 poises' as set forth in claims 42 and 45 respectively before amended on October 10, 1942. Said amendment canceled the quoted expressions in response to rejection of these claims for containing new matter. Nothing is seen in the case as originally filed which would serve as a basis for claiming any particular viscosity of the glass fed to the applicants' molds. The glass stream is represented as flowing from a feed orifice and accordingly, the Examiner has permitted the applicants to set forth the glass in claims 41 to 46 as 'freely flowing.' This glass is *freely flowing* in the same sense that the glass of the patentees Brookfield, Moorshead, and Potter is *freely flowing*. There is no basis, however, for interpreting 'freely flowing' to cover glass that flows freely like water, as in the case of Swan." [Italics quoted.]

The Examiner concluded his statement by commenting that the allowed claims covered all the patentable novelty in the case. With this conclusion the Board agreed (except as to claim 34).

After giving careful consideration to appellants' elaborate and well-prepared brief and to all their contentions and arguments in the petitions for rehearing and reconsideration below, we are fully in accord with the views of the Patent Office tribunals. It may be that appellants' apparatus and method have greatly improved the art. If so, the allowed claims, we think, sufficiently define the limits of their invention.

It occurs to us that it is proper to say, in passing, that the allowance of a claim such as No. 45 would be wholly unjustified in view of the state of the art. The breadth of such a claim in this highly developed art would have a tendency, if given patent protection, to impede and handicap the operations of skilled artisans, who always should have the right to exercise the skill of the art in perfecting and adapting methods and devices for bringing about desired results in the industry. It is true that in crowded arts, sometimes a slight change—the doing of a thing which at first blush seems to be of no consequence —may revolutionize an industry and be such a contribution, new and useful, as to be the proper subject of a patent monopoly. To draw the line between what is within the sphere of the skilled technician and what is within that of the inventor is a problem that has confronted the Patent Office and the courts during the life of our patent system.

The mere fact that appellants have made an invention and been allowed claims to cover the same is no warrant for concluding that they are entitled to measure the scope of their invention so broadly as to invade that domain which should be left open to the skilled artisan. The Patent Office tribunals have correctly concluded that the alleged invention defined by appellants' broad claims is that which is within the realm of work of the skilled technician and does not reflect the exercise of that almost indefinable mental effort which rises to the dignity of invention.

The decision of the Board of Appeals is affirmed.

Affirmed.

JACKSON, Associate Judge, concurs in the conclusion.